UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY LEWIS,<br><br>        Plaintiff,<br><br>    v.<br><br>TESLA, INC.,<br><br>        Defendant. | Case No. 24-cv-08178-AMO<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Re: Dkt. No. 9 |

Before the Court is Defendant Tesla, Inc.'s motion to compel arbitration and stay proceedings. Dkt. No. 9. The motion is fully briefed and because it was suitable for decision without oral argument, the Court vacated the July 30, 2025 hearing. *See* Civ. L.R. 7-1(b); Fed. R. Civ. P. 78. Having reviewed the parties' papers and the arguments made therein, as well as the relevant legal authority, the Court hereby **GRANTS** the motion for the following reasons.

**I.    BACKGROUND**

Plaintiff Anthony Lewis was a forklift driver at Tesla.[1] Complaint ("Compl.") (Dkt. No. 1-1) ¶ 10. While at work, Lewis's supervisor initiated hostile conversations with Lewis in which the supervisor made explicit reference to the supervisor's genitalia. *Id.* Lewis complained about the conduct to another supervisor. *Id.* Lewis was then reassigned to an area of the manufacturing plant where employees were given assignments that were more difficult, physically demanding, and prone to causing injury. Compl. ¶ 11. As a result of his supervisor's conduct and his reassignment, Lewis developed a psychiatric disability. Compl. ¶ 12. On July 14, 2021, Lewis's

---

[1] As it must, the Court accepts Lewis's allegations in the Complaint as true and construes the pleadings in the light most favorable to him. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

1    physician ordered him off work. *Id.* Tesla terminated Lewis's employment on August 15, 2023,

2    despite his ability to perform his duties and his request to return to work. Compl. ¶ 13. Lewis

3    filed a complaint with the California Civil Rights Department ("CCRD") and requested and

4    received a "right to sue" letter.[2] Compl. ¶¶ 8-9.

5          Lewis initiated this action on October 21, 2024 in Alameda County Superior Court,

6    asserting six causes of action under the Fair Employment and Housing Act ("FEHA") –

7    discrimination on basis of disability and race; failure to accommodate a disability; failure to

8    prevent discrimination, harassment, and hostile work environment; harassment; retaliation for

9    exercising protected rights under FEHA – and whistleblower retaliation under Cal. Lab. Code

10   § 1102.5. *See* Compl. On November 20, 2024, Tesla removed the case to federal court. Dkt. No.

11   1. Tesla filed the instant motion to compel arbitration on December 6, 2024 (Dkt. No. 9), Lewis's

12   opposition followed on December 30, 2024 (Dkt. No. 18),[3] and Tesla replied on January 2, 2025

13   (Dkt. No. 23).

14   **II.    DISCUSSION**

15         Tesla moves to compel all of Lewis's claims to arbitration pursuant to the Federal

16   Arbitration Act ("FAA"). 9 U.S.C. §§ 1, *et seq.* Lewis does not contest the existence of the

17   arbitration agreement or that it encompasses the dispute, but argues the Ending Forced Arbitration

18   of Sexual Assault and Sexual Harassment Act ("EFAA") precludes mandatory arbitration of his

19   claims. Opposition ("Opp.") (Dkt. No. 18) at 11-12. He also argues that this case should not be

20   compelled to arbitration because the agreement is unconscionable. The Court first determines

21   whether the EFAA allows Lewis to elect to litigate any of his claims in court.

22   //

---

[2] Lewis's Complaint states that he filed a complaint with the CCRD, *see* Compl. ¶ 8, but in the next paragraph refers to his claim "filed . . . with the DFEH," *see* Compl. ¶ 9. The CCRD was formerly the Department of Fair Employment and Housing ("DFEH"). *See* Cal. Gov. Code § 12901. Since Lewis's Complaint is not clear as to the timing of the administrative complaint or the agency's name at the time of filing, for purposes of this Order, the Court refers to the agency as the CCRD.

[3] The Court granted Lewis's motion for relief from a missed deadline (Dkt. No. 28) for having filed the opposition one court day late. Dkt. No. 35.

**A. EFAA**

Enacted on March 3, 2022 as an amendment to the FAA, the EFAA provides that:

> at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). "[A]ny dispute or claim that arises or accrues on or after the date of enactment" is subject to the EFAA. Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022); *see Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 924 (N.D. Cal. 2023). Courts, not arbitrators, decide whether the EFAA applies. 9 U.S.C. § 402(b). A plaintiff bears the burden of establishing that an arbitration agreement may be invalidated pursuant to the EFAA. *Ding v. Structure Therapeutics, Inc.*, 755 F. Supp. 3d 1200, 1207 (N.D. Cal. 2024).

If a sexual harassment claim accrues on or after the date of enactment, or if a sexual harassment dispute arises on or after that date, the EFAA applies, and the plaintiff may elect to pursue their case in court. Lewis contends this action involves a "sexual harassment dispute" within the EFAA's purview. Opp. at 7. Tesla does not challenge that Lewis has failed to state a harassment claim, but rather argues that the EFAA does not apply because the alleged sexual harassment claim accrued prior to the Act's enactment. Reply (Dkt. No. 23) at 6. To determine whether the EFAA applies, the Court first considers whether Lewis's sexual harassment claim accrued on or after the date of enactment, then considers whether the dispute arose on or after that date.

Based on the limited facts alleged in the Complaint, the Court cannot find Lewis has alleged a sexual harassment claim that accrued on or after March 3, 2022. A claim accrues when "the plaintiff learns of the 'actual injury,' i.e., an adverse employment action, and not when the plaintiff suspects a 'legal wrong,' i.e., that the employer acted with discriminatory intent." *Coppinger-Martin v. Solis*, 627 F.3d 745, 749 (9th Cir. 2010) (citing *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1049-51 (9th Cir. 2008)). In other words, the " 'standard rule' is that a claim accrues 'when the plaintiff has a complete and present cause of action.' " *Gabelli v.*

3

1  *SEC*, 568 U.S. 442, 448-49 (2013) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

2  Accordingly, "[t]he reference point for the accrual of [a plaintiff's] claims var[ies] based on the

3  cause of action." *Turner*, 686 F. Supp. at 924.  Certain claims are subject to the continuing

4  violation doctrine, which sets out a framework for evaluating accrual where claims are "composed

5  of a series of separate acts that collectively constitute one 'unlawful . . . practice.' " *National R.R.*

6  *Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002).

7        A hostile work environment claim, which Lewis alleges here, is one such type of claim,

8  because a hostile work environment does not occur on any one day but emerges over time.  *Id.* at

9  115.  Accordingly, such claims accrue and reaccrue each time a defendant commits an act that is

10  part of the same course of harassing conduct.  *Id.* at 118; *see Olivieri v. Stifel, Nicolaus & Co.,*

11  *Inc.*, 112 F.4th 74, 89 (2d Cir. 2024) ("[I]f Congress wanted the EFAA to apply only to claims that

12  'first' accrue after its enactment, it could have said so.").  Lewis's harassment claim thus would

13  have accrued after the EFAA enactment date if a "hostile act" that was part of the same course of

14  harassing conduct took place on or after March 3, 2022.  Although Lewis alleges generally that all

15  conduct described in the Complaint "was part of the same continuous pattern of discrimination

16  and harassing practices," Compl. ¶ 9, the only action alleged to have occurred on or after March 3,

17  2022 was Lewis's termination, *see* Compl. ¶ 13, which does not constitute a hostile act, because

18  unlike discrimination claims, harassment "consists of actions outside the scope of job duties which

19  are not of a type necessary to business and personnel management," such as "hiring and

20  firing . . . ." *Reno v. Baird*, 18 Cal.4th 640, 646-47 (1998).  Because Lewis has presented no facts

21  to support a finding that any harassing conduct took place on or after March 3, 2022, the Court

22  cannot find that Lewis's sexual harassment claim accrued on or after the EFAA's enactment.

23        Lewis also has failed to show a sexual harassment dispute arose after the EFAA's

24  enactment.  Courts have applied differing interpretations of the word "dispute."  Tesla urges the

25  Court to adopt the "straightforward and textually grounded approach" followed by several out-of-

26  circuit district courts, Reply at 9, by which a "dispute" arises at the time the sexual assault or

27  harassment occurred, *see, e.g.*, *Barnes v. Festival Fun Parks, LLC*, No. 3:22-cv-165, 2023 WL

28  4209745, at *10 (W.D. Pa. June 27, 2023); *Castillo v. Altice*, 698 F.Supp.3d 652, 656-57

1  (S.D.N.Y. 2023). Lewis argues the Court should follow a California Court of Appeal case stating
2  that a dispute arises "when one party asserts a right, claim, or demand, and the other side expresses
3  disagreement or takes an adversarial posture." *Kader v. S. Cal. Med. Ctr., Inc.*, 99 Cal.App.5th
4  214, 222 (2024). In that case, the court determined that the dispute arose at the time the plaintiff
5  filed a complaint with the DFEH, because up until the plaintiff filed a complaint with the DFEH,
6  no disagreement or controversy existed between the parties. *Id*. at 244. The Second, Third, Sixth,
7  and Eighth Circuits have adopted a similar approach, describing courts' determination of a dispute
8  as "a fact-dependent inquiry" requiring identification of "when the parties became adverse to one
9  another," which can include "when an injured party sends the defendant a demand letter, files an
10 administrative charge, requests arbitration, commences a lawsuit, or some other event occurs."
11 *Memmer v. United Wholesale Mortgage, LLC*, 135 F.4th 398 (6th Cir. 2025); *see also Cornelius v.
12 CVS Pharmacy Inc.*, 133 F.4th 240 (3d Cir. 2025) (noting "a 'dispute . . . arises' when an
13 employee registers disagreement – through either an internal complaint, external complaint, or
14 otherwise – with his or her employer, and the employer expressly or constructively opposes that
15 position" and holding an employee's complaint that was ignored by the employer constituted a
16 "dispute" under the EFAA) (modification in original); *Famuyide v. Chipotle Mexican Grill, Inc.*,
17 111 F.4th 895, 897-98 (8th Cir. 2024); *Olivieri*, 112 F.4th at 74. This makes more sense than
18 Tesla's approach, which ignores the ordinary meaning of "dispute" as "usually denot[ing] a
19 controversy between parties," *Memmer*, 135 F.4th at 409 (citing Black's Law Dictionary), and
20 conflates the terms "dispute" and "claim" such that they are effectively given the same meaning,
21 *Kader*, 99 Cal.App.5th at 223.

22 Applying the reasoning in *Kader*, a dispute first arose when Lewis "assert[ed] a right,
23 claim, or demand" and Tesla "expresse[d] disagreement or t[ook] an adversarial posture." *Kader*,
24 99 Cal.App.5th at 222. Tesla argues that this occurred when Lewis complained to a second
25 supervisor of the harassment and Tesla failed to take corrective action. Reply at 10. However,
26 Tesla does not explain how its failure to take corrective action constitutes an "expression of
27 disagreement or an adversarial posture." For his part, Lewis asserts that the dispute arose on the
28 date he filed this lawsuit. Opp. at 10. However, Lewis filed a complaint with the CCRD and

5

1  requested a right-to-sue letter, Compl. ¶¶ 8-9, and he fails to explain why submitting the
2  administrative complaint to the CCRD should not be deemed to initiate the dispute.  Indeed, courts
3  have rejected the idea that a dispute arises for EFAA purposes only when a lawsuit is filed.  *See*
4  *Memmer*, 135 F.4th at 410 (rejecting plaintiff's invitation to find that the " 'dispute' clock" only
5  starts to run after a lawsuit is initiated as "too narrow" and noting that "if Congress meant to so
6  limit the meaning . . . it would have done so.").  Thus, "[d]epending on the facts of the case, a
7  dispute may arise on the date that a lawsuit was filed, but it may arise earlier, too." *Id.*  Based on
8  the facts before it, the latest date that a dispute could have arisen was the date Lewis filed a
9  complaint with the CCRD.  Critically, however, Lewis does not allege or provide any evidence of
10 the date he filed the CCRD complaint.  There are no allegations or evidence before the Court that,
11 even construed in the light most favorable to Lewis, could support the inference that the CCRD
12 complaint was filed prior to March 3, 2022.  Because Lewis bears the burden, the Court therefore
13 cannot find that the dispute arose on or after the EFAA enactment date.

Because the Court cannot find either that a sexual harassment claim accrued or a dispute arose on or after the EFAA's enactment, Lewis may not elect to proceed with his case in this forum.

### B.  FAA[4]

The Court must next determine whether the FAA compels arbitration of Lewis's claims. The FAA provides that written arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2).  The FAA reflects a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25

---

[4] Tesla requests judicial notice of 42 exhibits in support of its motion to compel arbitration.  Dkt. No. 14.  All exhibits are orders from California state courts and courts in this District granting motions to compel arbitration by Tesla.  While the Court takes judicial notice of the existence of these documents because they are official court records, it does not consider them beyond that.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[A] court may take judicial notice of matters of public record.") (internal quotations and citation omitted).

1    (1991) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24
2    (1983)).  The FAA "mandates that district courts shall direct the parties to proceed to arbitration
3    on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v.
4    Byrd*, 470 U.S. 213, 218 (1985).  However, "arbitration is a matter of contract and a party cannot
5    be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v.
6    Dean Witter Reynolds*, 537 U.S. 79, 83 (2002).  Where a valid agreement to arbitrate exists and
7    encompasses the dispute at issue, "then the [FAA] requires the court to enforce the arbitration
8    agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207
9    F.3d 1126, 1130 (9th Cir. 2000) (internal citations omitted).  When evaluating whether a party is
10   bound by an arbitration agreement, federal courts " 'apply ordinary state-law principles that
11   govern the formation of contracts' to decide whether an agreement to arbitrate exists." *Norcia v.
12   Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *First Options of
13   Chi. Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

14        In accepting Tesla's offer of employment, Lewis electronically signed an offer letter that
15   included the following arbitration agreement ("Agreement") on the second page:

> [A]ny and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by final, binding and private arbitration in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes . . . .

20   Offer Letter (Dkt. No. 11-1) at 2.  Lewis argues he cannot be compelled to arbitrate because the
21   Agreement is unconscionable and is thus unenforceable.  Opp. at 11-12.  The Court disagrees.

22        "It is well-established that unconscionability is a generally applicable contract defense,
23   which may render an arbitration provision unenforceable." *Nagrampa v. MailCoups, Inc.*, 469
24   F.3d 1257, 1280 (9th Cir. 2006).  Under California law, a court may refuse to enforce a provision
25   when it is procedurally and substantively unconscionable.  *Id.*  Although both forms of
26   unconscionability must be present, "they need not be present in the same degree." *Sanchez v.
27   Valencia Holding Co., LLC*, 61 Cal.4th 899, 910 (2015) (citation omitted).  "[T]he more
28   substantively oppressive a contract term, the less procedurally unconscionable it must be to be

7

deemed unenforceable, and vice versa." *Id*. "[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Luong v. Sper Micro Computer, Inc.*, 2024 WL 4681605, at *3 (N.D. Cal. Nov. 4, 2024).

The Court first determines whether Lewis has established procedural unconscionability before considering whether he has shown substantive unconscionability.

### 1. Procedural unconscionability

Procedural unconscionability exists where there is "oppression or surprise due to unequal bargaining power." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (quoting *Pinnacle Museum Tower Assn. v. Pinnacle Mkt Dev., LLC*, 55 Cal.4th 223, 236 (2012)) (internal quotation marks omitted). "Oppression" concerns "an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Id.* (quoting *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017)). California law provides that oppression may be established by showing that an agreement was a contract of adhesion, *id.* at 923, which is a contract "imposed and drafted by the party of superior bargaining strength, relegat[ing] to the subscribing party only the opportunity to adhere to the contract or reject it," *Poublon*, 846 F.3d at 1260 (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000)). "[T]he adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability in a range of circumstances," but adhesion contracts are not per se unconscionable. *Id.* at 1261. In the employment context, "if an employee must sign a non-negotiable employment agreement as a condition of employment but there is no other indication of oppression or surprise, then the agreement will be enforceable unless the degree of substantive unconscionability is high." *Id.*

Tesla does not dispute that the Agreement is a contract of adhesion but argues there is no other evidence of oppression or surprise. Reply at 12. Circumstances that may establish oppression include:

> (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's

8

1   review of the proposed contract was aided by an attorney.

2   *OTO, LLC v. Kho*, 8 Cal.5th 111, 126-27 (2019) (citation omitted).  Lewis argues oppression

3   exists here because he "did not have a meaningful opportunity to review and understand the

4   terms" of the letter, and "only accessed [it] for two seconds when following the employer's

5   instructions to sign it, clicking through several standardized forms he was requested to

6   acknowledge."  Opp. at 13-14.  However, the letter is four pages long, and Lewis points to no

7   evidence that Tesla exerted pressure on him, denied him sufficient time to consider the contract, or

8   deprived him of the opportunity to review the contract with an attorney.  These factors weigh

9   against a finding of oppression.  *See Collins v. Virtela Tech. Servs., Inc.*, No. C 12-613 CW, 2012

10  WL 4466551, at *14 (N.D. Cal. Sept. 26, 2012) (finding arbitration agreement enforceable where

11  there was "no evidence that Plaintiff was subject to significant external pressure driving him to

12  sign the documents without taking time to review them or have someone else review them").

13  "Surprise involves the extent to which the contract clearly discloses its terms as well as the

14  reasonable expectations of the weaker party."  *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916,

15  922 (9th Cir. 2013) (citations omitted).  "An agreement may thwart understanding by hiding the

16  challenged provision, or by using language – for example, complex statements filled with legal

17  jargon – rendering the substance of the challenged provision opaque."  *Long Beach Unified Sch.*

18  *Dist. v. Margaret Williams, LLC*, 43 Cal.App.5th 87, 104 (2019).  Lewis argues the Agreement

19  was "deceptively buried" within the letter, rather than presented to Lewis as a standalone

20  arbitration agreement, and it lacked a header or other "important conventions laypersons would

21  use to navigate a document," instead "deceptively styled to be housed within a paragraph

22  concerning confidentiality."  Opp. at 13.  However, this is not a case in which the arbitration

23  agreement is couched within a lengthy document or is written in a font size so small it is "visually

24  impenetrable" and "challenge[s] the limits of legibility."  *OTO*, 8 Cal.5th at 128.  Nor is it a case

25  in which the arbitration agreement uses undefined legal terms, the definitions of which are located

26  in a separate document such that a "reader seeking to make sense of the arbitration provision

27  would have to flip through a separate document in order to understand the extent to which they

28  would be bound."  *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 485 F. Supp. 3d 1168, 1186

(N.D. Cal. 2020), *aff'd*, No. 20-16937, 2021 WL 5356537 (9th Cir. Nov. 17, 2021). Although Lewis insists that "[t]he arbitration provisions were not visible to [him] in the interface platform [he] used to acknowledge the letter," Declaration of Anthony Lewis (Dkt. No. 18-1) ¶ 11, he does not explain further, and without more the Court cannot find evidence of surprise. *Gerton v. Fortiss*, LLC, No. 15-CV-04805-TEH, 2016 WL 613011, at *3 (N.D. Cal. Feb. 16, 2016) (citing *Pinnacle*, 55 Cal.4th at 236) ("Plaintiff, as the party resisting arbitration, bears the burden of proving unconscionability.").

In sum, Lewis has shown little to no oppression or surprise, and therefore minimal procedural unconscionability. The Court next considers substantive unconscionability.

### 2. Substantive unconscionability

Substantive unconscionability exists where terms are "overly harsh," "unduly oppressive," "unreasonably favorable," or "shock the conscience." *Poublon*, 846 F.3d at 1261 (citing *Sanchez*, 61 Cal.4th at 910-911). "Not all one-sided contract provisions are unconscionable." *Sanchez*, 61 Cal.4th at 911. Rather, substantive unconscionability exists where terms are "unreasonably favorable to the more powerful party," not simply an "old-fashioned bad bargain." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016) (citation omitted).

Lewis argues the Agreement is "completely one sided in favor of Defendant Tesla and lacks any mutuality." Opp. at 15. An agreement lacks mutuality "if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." *Armendariz*, 24 Cal.4th at 120. Here, the Agreement requires that both parties submit their claims to arbitration, with the exception of claims for injunctive relief and issues or disputes arising under the Proprietary Information and Inventions Agreement ("PIIA"). Dkt. No. 11-1 at 3. Lewis argues the PIIA exception is "completely one sided" because confidential information is defined as information pertaining to "the Company," and therefore it covers claims that Tesla – not Lewis – is most likely to raise. Opp. at 12-13 (citing *Davis v. Kozak*, 53 Cal.App.5th 897, 916 (2020) (finding arbitration agreement was substantively unconscionable because it "effectively exempt[ed] from arbitration the types of claims [the defendant was] most likely to bring against an employee")). However, contracts may

1 provide "the party with superior bargaining strength a type of extra protection for which it has a
2 legitimate commercial need without being unconscionable" as long as there are "business
3 realities" that "create the special need [that] are explained in the contract itself [or are] factually
4 established." *Armendariz*, 24 Cal.4th at 117. In the Agreement, Tesla explains that "use,
5 misappropriation, or disclosure of" confidential information "would constitute a breach of trust
6 and could cause serious and irreparable injury to the Company" and "it is essential to the
7 protection of the Company's goodwill and maintenance of the Company's competitive position
8 that all [confidential information] be kept confidential and that [employees] do not disclose" it.
9 Dkt. No. 11-1 at 3-4. This is a "legitimate commercial need." *Armendariz*, 24 Cal.4th at 117.
10 Accordingly, Lewis has not met his burden of showing substantive unconscionability.

Because Lewis has not met his burden of showing the Agreement is unconscionable, the Court finds it is enforceable. Tesla's motion to compel is therefore **GRANTED**.

### C. Motion to Stay

Tesla moves to stay these proceedings pending arbitration. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Tesla's motion to stay is therefore **GRANTED**.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Tesla's motion to compel and motion to stay. The parties **SHALL FILE** a joint status report on December 15, 2025, and every 90 days thereafter, to inform the Court of the status of the arbitration proceedings.

**IT IS SO ORDERED.**

Dated: September 16, 2025

ARACELI MARTÍNEZ-OLGUÍN
United States District Judge

11